J-S63001-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.N.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.C., MOTHER | : | No. 1837 EDA 2015 |

Appeal from the Decree entered June 1, 2015,
Court of Common Pleas, Montgomery County,
Orphans' Court at No. 2015-A0052

BEFORE:  DONOHUE, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED OCTOBER 09, 2015**

M.C. ("Mother") appeals from the June 1, 2015 decree entered by the Montgomery County Court of Common Pleas involuntarily terminating her parental rights to D.N.C. ("Child"), born in November 2005, pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8) and (b).[1]  After careful review, we affirm.[2]

The record reflects the following relevant facts and procedural history.[3]

Mother's involvement with Montgomery County Office of Children and Youth

---

[1]  In her brief on appeal, Mother also suggests that the orphans' court terminated her rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), and raises an argument in opposition to that finding.  **See** Mother's Brief at 21-25.  Our review of the record reveals, however, that although subsection (a)(1) was raised in the petition seeking to terminate her parental rights to Child, the orphans' court only granted termination pursuant to subsections (a)(2), (8) and (b).  **See** Orphans' Court Decree, 6/1/15; Orphans' Court Opinion, 6/1/15, at 10.

[2]  On the same date, the orphans' court also terminated the parental rights of B.C. ("Father"), and he has not appealed that decision.

[3]  As Father did not appeal from the decree terminating his parental rights to Child, we omit from our discussion the propriety of that decree and the facts attendant thereto.

("OCY") dates back to 2006. N.T., 5/11/15, at 45-47. Of relevance to the case before us, on July 6, 2011, OCY received a report that Mother was smoking crack and engaged in prostitution while caring for Child. *Id.* at 47. Upon locating Mother and Child, OCY found them to be living in a condemned house, with knives, guns, and drug paraphernalia inside the home. *Id.* OCY obtained an emergency custody authorization and received permission to place Child in foster care. *Id.* On July 19, 2011, Mother agreed to the dependency adjudication. *Id.* at 103.

Mother's Family Service Plan ("FSP") goals required her to achieve and maintain sobriety; obtain a drug and alcohol evaluation and follow any recommendations made; obtain a psychological evaluation and follow any recommendations made; obtain stable housing and employment; cooperate with OCY; and visit with Child. *Id.* at 50; OCY Exhibit 2. At the time of the termination hearing, Mother remained noncompliant with her FSP goals. Specifically, she failed to successfully complete drug and alcohol treatment and had relapsed numerous times throughout the life of the case; she did not provide any proof that she obtained a psychological evaluation; she was incarcerated at the time of the termination hearing and had no housing; she was working through the prison's work release program but otherwise had not had stable employment; and throughout the nearly four years Child had been in foster care, Mother only saw him between three and eight times,

with the last visit occurring at court the previous summer. ***See*** N.T., 5/11/15, at 66-68, 125, 155-57, 162-63.

Since Child was removed from her care, Mother has been incarcerated six times – per Mother's testimony, from August 2011-November 2011; May 2012-August 2012; October 2012-April 2013; August 2013-October 2013; April 2014-July 2014; and January 2015-August 2015 (at which time she will have served the maximum sentence on her original charge) – five of which occurred because she stopped reporting to her probation officer when she relapsed. ***Id.*** at 151-52, 168-69. She has had sporadic telephone contact with Child and periodically written him letters. ***Id.*** at 68. Mother historically would contact OCY about Child and inform the caseworker of her whereabouts only when she was incarcerated or in treatment, and then would disappear for months at a time without contacting OCY. ***Id.*** at 138-41. Mother admitted that she was using drugs when she fell out of contact with OCY. ***Id.*** at 169.

In the five years Child lived with Mother prior to his removal from her care in 2011, Mother lived in eight different locations. ***Id.*** at 169-71. Following Child's removal, Child resided in five different foster homes. ***Id.*** at 69. The first disrupted when the foster mother obtained employment and did not have suitable childcare for Child; the next three disrupted because of Child's behaviors, which the caseworker described as "argumentative," "angry," "obstinate," and "rude." ***Id.*** at 69-70. Child was then placed with

Father's friends, where Child was doing well and did not have behavioral concerns, but they indicated that they would not be an adoptive resource for Child several days before OCY placed Child with them. *Id.* at 70-71.

OCY conducted "child specific recruitment" and subsequently located an adoptive resource for Child. *Id.* at 26. Child was scheduled to begin visits with this family the week after the termination hearing, with placement to occur in June 2015, as his current foster parents would not keep him beyond the last day of the school year. *Id.* at 30, 71-72. Child has received services to talk about and prepare him for adoption, and although he was initially upset by the idea, Child is reportedly in agreement with adoption. *Id.* at 30, 65-66.

OCY filed a petition to involuntarily terminate Mother's parental rights to Child on March 11, 2015. On May 11, 2015, the orphans' court held a hearing and took testimony on the petition. The orphans' court entered its decree on June 1, 2015 terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8), and (b).

Mother filed a timely notice of appeal, and concomitantly filed her concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). On appeal, she challenges the sufficiency of the evidence to support the decree terminating her parental rights to Child. *See* Mother's Brief at 4-5.

We review a decree terminating a parent's rights for an abuse of discretion or error of law. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). We must accept the credibility determinations and factual findings of the trial court that are supported by the record. *Id.* This Court may not reverse a termination decree simply because we would have reached a different result based on the same facts. *Id.*

Under section 2511 of the Adoption Act, the trial court must engage in a bifurcated process. First, the trial court must examine the parent's conduct under section 2511(a). *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006). The burden of proof is on the petitioner to establish by clear and convincing evidence the existence of grounds for termination under section 2511(a). *In re J.L.C. and J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). If termination is found by the trial court to be warranted under section 2511(a), it must then turn to section 2511(b), and determine if termination of the parent's rights serves the children's needs and welfare. *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012).

This Court need only agree with the trial court's decision as to any one subsection of section 2511(a) in order to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc), *appeal denied*, 863 A.2d 1141 (Pa. 2004). We will therefore examine the facts under section 2511(a)(2), which states:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Mother contends that because she was expecting to be released from incarceration in August 2015 and had made efforts to achieve sobriety that there was no support for the orphans' court's conclusion that she was incapable of parenting Child. Mother's Brief at 25, 27-28. Mother asserts that she expressed her intention to obtain housing following her release and that she wants to have Child returned to her care, and the orphans' court therefore erred by terminating her parental rights pursuant to subsection (a)(2). *Id.* at 29. The orphans' court found that Mother's repeated incarcerations have "significantly impaired" her ability to parent Child. Orphans' Court Opinion, 6/1/15, at 8. Furthermore, the court found, "Even when not incarcerated, [Mother has] failed to provide [C]hild with the essential parental care, control, or subsistence necessary for his physical or mental well-being," and that Mother has not and cannot remedy her incapacity. *Id.* The orphans' court found Mother's promises to turn things

- 6 -

around after her release from this round of incarceration were not worthy of belief. *Id.*

"The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. Ct. 2015) (quoting *In re A.L.D.,* 797 A.2d 326, 337 (Pa. Super. 2002)). Furthermore,

> the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and **strong, continuous parental ties**, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (emphasis supplied) (citing *In re William L.*, 383 A.2d 1228, 1240 (Pa. 1978)). As we have stated many times, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re I.J.*, 972 A.2d 5, 9 (Pa. Super. 2009) (quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003)).

> Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. …This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for

> the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care. … [A] parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life.

*In re E.A.P.*, 944 A.2d at 83 (internal citations omitted).

Our review of the record supports the orphans' court's decision. Child was removed from Mother's care by OCY based upon concerns regarding her drug and alcohol use, stability, housing, and criminal activity. These problems rendered her incapable of parenting Child at the time of his removal. Mother continued in her drug use throughout the life of this case, rarely seeing Child over the nearly four years he was out of her care. She had no housing at the time of the termination hearing, as she was incarcerated (again) following a relapse (her fifth). Although she has made several efforts to achieve sobriety, these efforts have failed, leaving her in no better position to parent Child than she was at the time of his removal.

Although Mother promised that she was going to turn things around and get on the rights path following her release from incarceration, she had no plans as to how she was going to remain clean and take care of herself and Child, stating only that she planned to move somewhere new so she could "start over." N.T., 5/11/15, at 167. The record reflects that Mother made similar promises in a letter to OCY that she wrote during a prior

incarceration, but failed to follow through. **See** Mother's Exhibit 4. Furthermore, Mother admitted that she could not identify when she **might** be in a position to parent Child, stating only that she would be capable of parenting him "in due time" following her release from incarceration. **Id.** at 161, 174. Mother's promise to make Child a priority now, when she has failed to do so for approximately half of his life, was properly rejected by the orphans' court. **See In re A.L.D.**, 797 A.2d at 340 ("a parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous"); **In re Adoption of A.C.H.**, 803 A.2d 224, 228 (Pa. Super. 2002) (stating that the trial court, as finder of fact, makes all determinations of witness credibility).

In the four years leading up to the termination hearing, Mother has failed to refrain from drug use for any appreciable amount of time, resulting in her nearly continuous incarceration. Mother has not regularly visited or otherwise communicated with Child, having last seen him approximately a year prior to the termination hearing. She has been incapable of providing parental care, control or subsistence for his physical and mental well-being, and this incapacity persisted to the day of the termination hearing. We therefore find no error or abuse of discretion in the orphans' court's decision to terminate Mother's parental rights to Child pursuant to 23 Pa.C.S.A. 2511(a)(2).

We now turn to subsection (b), which states:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b). Under section 2511(b), we inquire whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted).

The trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* The mere finding of a parent-child bond does not preclude termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). "[A] court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible minimum parental

care to which that child is entitled." ***In re J.W.***, 578 A.2d 952, 958 (Pa. Super. 1990) (emphasis in original). Expert testimony is not required for the trial court to determine if there is a positive bond between a parent and his child. ***In re K.K.R.-S.***, 958 A.2d 529, 533 (Pa. Super. 2008).

Mother asserts that because she loves Child and raised him to the age of five there is necessarily a bond between them, the severance of which "would be detrimental to [Child]." Mother's Brief at 34. In assessing the bond between Mother and Child, the orphans' court found that "although there is affection and [Mother] cares for [C]hild, [Mother has] not maintained sufficient and consistent contact and [has] not provided a loving, stable and nurturing home for [C]hild. As a result, any bond that exists is not a healthy parental bond between [C]hild and [Mother]." Orphans' Court Opinion, 6/1/15, at 9. The orphans' court thus concluded that because Mother has not provided Child with a home, met his needs, provided him with much needed stability, or maintained a parent-child relationship with him, Child's needs and welfare are best met by terminating Mother's parental rights to Child. ***Id.*** at 10.

The record supports the orphans' court's decision in this regard as well. George G. Oscavich, Jr., the OCY caseworker assigned to Child's case since August 2012, testified that Child never mentioned Mother to him. N.T., 5/11/15, at 68. Oscavich had asked Child about Mother, but Child "never discusses her." ***Id.*** at 116. From Oscavich's observations, Mother

and Child no longer had a relationship, and Child would not be harmed by terminating whatever bond did exist. *Id.* at 69. According to Oscavich, Child is very "matter of fact" about the proposition of his parents' rights being terminated and he appears to have "already separated himself and that his expectation is that he will be moving on," as Child "wants a mother and a father. He wants stability." *Id.* at 136.

Child is diagnosed with ADHD. *Id.* at 71. In his brief lifetime, he has had thirteen different homes – five placements through OCY and eight when he resided with Mother. *Id.* at 69, 169-71. There has been nothing stable in his life, least of all his relationship with Mother. Child has seen Mother between three and eight times over the last four years, with intermittent phone calls and letters in between.

Child now has the opportunity for a fresh start with a new family that OCY is optimistic will be a permanent family for him. *Id.* at 26-28, 71-72. The prospective adoptive parents have adopted in the past, are aware of Child's diagnosis and behavioral issues, enjoy the same activities that Child does, have pets and a nephew and niece around Child's age. *Id.* at 72. OCY has talked to Child about adoption, and particularly about adoption by this couple, and Child was excited about it. *Id.* at 30, 72.

Based on the record before us, we find no error or abuse of discretion in the orphans' court's conclusion that Child's developmental, emotional and

physical needs and welfare are best met by terminating Mother's parental

rights.  We therefore affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/2015